UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROSS D. AMERSON,

Plaintiff,

v. Case No. 8:25-cv-2509-CPT

FRANK BISIGNANO,
Commissioner of Social Security,

Defendant.
_____________________________/

**O R D E R**

The Plaintiff seeks judicial review of the Commissioner's denial of his claim for Disability Insurance Benefits (DIB). For the reasons discussed below, the Commissioner's decision is affirmed.

I.

The Plaintiff was born in 1969, completed high school, and has no past relevant work experience. (R. 58, 244, 265, 500, 806). In April 2015, the Plaintiff applied for DIB, alleging disability as of January 2012 due to fibromyalgia, limb issues, lumbar spondylosis, high cholesterol, and a degenerative disc in his back. (R. 149, 796). The Social Security Administration (SSA) denied the Plaintiff's application both initially and on reconsideration. (R. 784–89, 793–807).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter in May 2017. (R. 98–146, 177–78). The Plaintiff was not represented at that proceeding and testified on his own behalf. (R. 100). The Plaintiff's wife and a vocational expert (VE) also testified. (R. 101–02, 137–46).

In a decision handed down in October 2017, the ALJ found that the Plaintiff was not disabled. (R. 535–543). After the Appeals Council denied the Plaintiff's subsequent request for review (R. 548–51), the Plaintiff successfully challenged the Commissioner's decision in federal court, and the case was then remanded for further administrative proceedings. *See Amerson v. Comm'r of Soc. Sec.* (*Amerson I*), No. 8:19-cv-682-T-30CPT, (Doc. 1) (M.D. Fla. Mar. 20, 2019); *id.*, (Doc. 19) (M.D. Fla. Sept. 23, 2020).

On remand, a second ALJ held another hearing on the Plaintiff's application (R. 509–31) and thereafter issued an unfavorable decision in June 2021. (R. 490–502). The Plaintiff again filed a federal court action contesting that decision, which again resulted in a remand in September 2023. *See Amerson v. Comm'r of Soc. Sec.* (*Amerson II*), No. 8:22-cv-1393-CPT, (Doc. 1) (M.D. Fla. June 20, 2022); *id.*, (Doc. 26) (M.D. Fla. Sept. 28, 2023).

Following an additional hearing on remand (R. 821–49), the second ALJ authored yet another unfavorable decision in July 2024. In support of that ruling, the second ALJ found that the Plaintiff (1) had not engaged in any substantial gainful activity during the period from his alleged onset date in January 2012 through his date last insured (DLI) at the end of December 2016; (2) had the severe impairments of

fibromyalgia, obesity, and lumber degenerative disc disease; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listings;[1] (4) had the residual functional capacity (RFC) to perform light work with additional physical limitations; and (5) did not have any past relevant work experience but based on the VE's testimony, could engage in a number of occupations that were sufficiently prevalent in the national economy. (R. 798–807).

The Appeals Council denied the Plaintiff's ensuing request for review. (R. 784–89, 793–95). Accordingly, the ALJ's decision became the final decision of the Commissioner. *See Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1313 (11th Cir. 2021) (citation omitted).

II.

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). A physical or mental determinable impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

[1] The listings are found at 20 C.F.R. Pt. 404, Subpt. P, App'x 1, and catalog those impairments that the SSA deems significant enough to prevent a person from performing any gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). When a claimant's affliction matches an impairment on the list, the claimant is automatically entitled to DIB. *Id.*; *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

To ascertain whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam)[2] (citing 20 C.F.R. § 404.1520(a)(4)). Under this process, an ALJ must assess whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals one of the listings; (4) has the RFC to engage in his past relevant work; and (5) can perform other jobs in the national economy given his RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). Although the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *See Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1279 (11th Cir. 2020) (citation omitted); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries his burden, the claimant must then prove he cannot engage in the work identified by the Commissioner. *See Goode*, 966 F.3d at 1279. In the end, "the overall burden of demonstrating the existence of a disability . . . rests with the claimant." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (citation omitted).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the

[2] Unpublished opinions do not constitute binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

matter after a hearing. 42 U.S.C. § 405(g). Judicial review is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is buttressed by substantial evidence. *See id.*; *see also Hargress v. Soc. Sec. Admin.*, *Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citations and quotation marks omitted). In gauging whether substantial evidence bolsters the Commissioner's decision, a court may not decide the facts anew, make credibility determinations, or reweigh the evidence. *See Viverette*, 13 F.4th at 1314 (citation omitted); *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam)). While a court will defer to the Commissioner's factual findings, it will not defer to his legal conclusions. *See Viverette*, 13 F.4th at 1313–14 (citation omitted); *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

III.

The Plaintiff raises three main challenges on appeal: (1) the ALJ incorrectly discounted the Plaintiff's subjective complaints of pain and other symptoms stemming from his fibromyalgia; (2) the ALJ wrongly attributed "little weight" to the opinion of a physical therapist, Doug Buethe, who examined the Plaintiff on one occasion; and (3) the ALJ did not properly address certain lay evidence. (Docs. 25, 33). Each of these challenges—which the Court has reordered for purposes of its analysis—will be addressed in turn.

A.

The Plaintiff's first challenge, as noted above, pertains to his claimed fibromyalgia-related symptoms. Before delving into the merits of this challenge, some background regarding the nature of fibromyalgia and the legal framework for appraising a claimant's subjective complaints is necessary.

Social Security Ruling (SSR) 12-2p "provides guidance on how [the SSA] develop[s] evidence to establish that a person has a medically determinable impairment of fibromyalgia, and how [it] evaluates fibromyalgia in disability claims and continuing disability reviews." SSR 12-2p, 2012 WL 3104869, at *1 (July 25, 2012). SSR 12-2p defines fibromyalgia as "a complex medical condition [that is] characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least [three] months." *Id*. at *2. As the Eleventh Circuit has recognized, fibromyalgia is a difficult affliction to assess because it is often unaccompanied by any "medical or laboratory signs and is generally diagnosed mostly on a[n] individual's" subjective complaints. *Moore*, 405 F.3d at 1211. Common symptoms of fibromyalgia include chronic achiness and discomfort "throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with the disease." *Davis v. Astrue*, 287 F. App'x 748, 762 (11th Cir. 2008) (per curiam) (citation omitted). Additionally, the symptoms of fibromyalgia "can wax and wane so that a person may have 'bad days and good days.'" SSR 12-2p, 2012 WL 3104869, at *6. As a result, "longitudinal records reflecting ongoing medical evaluation and treatment from

acceptable medical sources are especially helpful in establishing both the existence and severity of [fibromyalgia]." *Id*. at *3.

The evaluation of a claimant's subjective complaints of pain and other symptoms, including those affiliated with fibromyalgia, is governed by the Eleventh Circuit's "pain standard." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam). Under this standard, a claimant must show "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from the condition or (3) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain." *Id.* (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam)). If a claimant meets the pain standard, the ALJ must then gauge the intensity and persistence of the claimant's symptoms to determine how they restrict his capacity to work. *See* 20 C.F.R. § 404.1529(c)(3). The considerations relevant to this inquiry include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication that the claimant takes or has taken to alleviate his pain or other symptoms; (5) treatment (other than medication) that the claimant receives or has received for relief of his pain or other symptoms; (6) any measures that the claimant utilizes or has utilized to relieve his pain or other symptoms; and (7) other factors concerning the claimant's functional limitations due to pain or other symptoms. *See id.*; *see also* SSR 12-2p, 2012 WL 3104869, at *5.

After assessing "a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed [on appeal] for substantial evidence." *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (per curiam) (citation omitted). A reviewing court will not disturb a clearly articulated credibility finding made by an ALJ that is adequately substantiated by the record evidence. *See Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).

In the ALJ's decision here, she acknowledged that the Plaintiff had been diagnosed with and suffered from the severe impairment of fibromyalgia and summarized all the Plaintiff's claimed symptoms, including those associated with his fibromyalgia. (R. 803–806). Specifically, the ALJ noted:

> [The Plaintiff] alleged . . . [that] he was unable to perform basic work-related functions. He reported and testified that he had chronic fatigue, weakness, and diffuse generalized musculoskeletal and spinal pain that was particularly worse in his neck, back, arms, and legs. He indicated that he had acute flare-ups that would debilitate him for [two] to [three] days. He testified that he needed to constantly change positions and had worsening pain with repetitive activities. He indicated that he also experienced numbness of the extremities with swelling, poor grip strength, and difficulty with fine/gross manipulations. He testified that he experienced vertigo-like symptoms with trouble gripping, stooping, squatting, and kneeling. He testified at the [first ALJ hearing in] May of 2017 . . . that he did not use an assistive device but used a cart for balance. He testified at the [most recent hearing in] July of 2024 . . . that he did not go anywhere public with a walker but also depended on a cart for balance. He indicated that he quickly lost strength and endurance, which resulted in severe limitations in standing, walking, sitting, lifting, and carrying. The [Plaintiff] reported and testified that he lived with his spouse and[,] with some limitations, [was] capable of performing a wide range of activities of daily living[,] such as personal care, limited cooking,

> some household chores, shopping, managing his finances, and driving short distances.

(R. 803).

In connection with the ALJ's recitation of the Plaintiff's self-reports of pain and other infirmities, the ALJ determined that while the Plaintiff's impairments "could reasonably be expected to produce [his] alleged symptoms," the Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [those] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record[.]" *Id.* In support of this finding, the ALJ identified various evidence in the record that did not comport with the Plaintiff's subjective complaints. (R. 803–06).

The ALJ highlighted, for example, that the Plaintiff did not want to take any medications, did not follow-up with his physical therapist, Buethe, after their lone session together, and was discharged from another provider's practice because he was non-compliant with his treatment. *See* (R. 805); *Cf. Amerson I*, (Doc. 19 at 11–12) (M.D. Fla. Sept. 23, 2020). Case law supports the ALJ's reliance on this record of conservative treatment in gauging the credibility of the Plaintiff's claimed symptoms. *See Horowitz v. Comm'r of Soc. Sec.*, 688 F. App'x 855, 863 (11th Cir. 2017) (per curiam) ("ALJs are permitted to consider the type of a treatment a claimant received in assessing the credibility of h[is] subjective complaints."); *see also Morales v. Comm'r of Soc. Sec.*, 799 F. App'x 672, 677 (11th Cir. 2020) (per curiam) (stating that "conservative treatment can support discrediting subjective symptoms even in cases where, like here, a claimant alleges pain from both fibromyalgia and other

conditions"); *Chambers v. Saul*, 2020 WL 4757336, at *9 (S.D. Fla. April 29, 2020) (upholding the ALJ's credibility determination in a fibromyalgia case where the ALJ evaluated factual evidence related to, inter alia, the claimant's "treatment of pain") (citation omitted), *report and recommendation adopted,* 2020 WL 4753299 (S.D. Fla. Aug. 17, 2020).

The ALJ further noted—as described above—that the Plaintiff did not use an assistive device or a walker and only employed a shopping cart for balance at the store, and that the Plaintiff was also able to engage in various activities of daily living, such as shopping, cooking with breaks, driving short distances, managing his finances, and caring for himself. *See* (R. 803). The ALJ's consideration of this evidence in assessing the Plaintiff's subjective complaints was proper as well. *See Lemons v. Comm'r, Soc. Sec. Admin.*, 2022 WL 4489646, at *2–3 (11th Cir. Sept. 28, 2022) ("An ALJ may discredit a claimant's subjective complaints based, at least in part, on daily activities.") (citation omitted); *Conner v. Astrue*, 415 F. App'x 992, 995 (11th Cir. 2011) (same); *see also Brown v. Comm'r of Soc. Sec.*, 680 F. App'x 822, 826 (11th Cir. 2017) (per curiam) (ruling that substantial evidence buttressed the ALJ's determination that the claimant's subjective complaints were only partially credible because, among other things, "no physician suggested that [the claimant] was unable to . . . perform daily activities due to [his] conditions[;]" his "doctors primarily recommended conservative treatments[;]" and he "engage[d] in a range of activities despite the pain [his] conditions caused"); *Hoffman v. Astrue*, 259 F. App'x 213, 219–20 (11th Cir. 2007) (per curiam) (rejecting the claimant's argument that because fibromyalgia often lacks objective evidence, the ALJ

could not consider his daily living activities and the level of care he was afforded); *Chambers*, 2020 WL 4757336, at *8–9 (upholding the ALJ's discounting of the claimant's subjective complaints due to, among other factors, the claimant's "conservative medical treatment" and "level of daily activity") (collecting cases).

Along with the Plaintiff's conservative treatment and daily living activities, the ALJ conducted a detailed review of "longitudinal records" which covered a nearly four-year period from May 2014 to March 2018 and which "reflect[ed the] ongoing medical evaluation and treatment [the Plaintiff received] from acceptable medical sources." SSR 12-2p, 2012 WL 3104869, at *3. After a robust analysis of this documentation, *see* (R. 801–06), the ALJ summarized her findings as follows:

> The [Plaintiff's] subjective complaints of extreme limitations were inconsistent with the over-all [sic] record. Examination notes were consistently normal with few isolated mildly reduced strength and musculoskeletal/spinal tenderness. [The Plaintiff] had full range of motion, normal sensation, and no neurological deficits for the most part. Neurology and rheumatology examination notes were also unremarkable with the exception of scattered [ten] to [eleven] out of [eighteen] tender points and weakness of the arms when holding them up. Finally, consultative examination also indicated no deficits with essentially normal range of motion, full strength, and no neurological deficits.

(R. 805–06).

In light of the ALJ's review of these extensive and wide-ranging medical records and the other evidence discussed above, including the Plaintiff's conservative treatment and his daily living activities, the Court finds that the ALJ appropriately assessed the Plaintiff's subjective complaints of pain and other symptoms and that the

ALJ's credibility determination regarding the Plaintiff's self-reports is buttressed by substantial evidence. *See Laurey v. Comm'r of Soc. Sec.*, 632 F. App'x 978, 989 (11th Cir. 2015) (per curiam) (finding that substantial evidence bolstered the ALJ's determination that the claimant's subjective complaints were only partially credible given the medical records, the claimant's conservative treatment plan, and his daily living activities); *see also Moore*, 405 F.3d at 1211–12 (affirming the ALJ's decision regarding the claimant's "symptoms of pain and fibromyalgia" that was not grounded solely on the lack of objective medical evidence); *Tremblay v. O'Malley*, 2025 WL 905849, at *5 (M.D. Fla. Jan. 16, 2025) ("The ALJ's consideration of the objective medical evidence [in a fibromyalgia case] was proper as it is a useful indicator to assist the Commissioner in evaluating the intensity and persistence of symptoms and pain.") (quoting *Morales*, 799 F. App'x at 677) (internal quotation marks omitted), *report and recommendation adopted,* 2025 WL 903467 (M.D. Fla. Mar. 25, 2025).

In an effort to avoid this outcome, the Plaintiff points out that the ALJ's credibility determination is based "word for word" on the same findings as those used by the ALJ in assigning "little weight" to Buethe's opinion (which is described *infra*). (Doc. 25 at 22). This is hardly surprising, however, given that the analysis of the Plaintiff's subjective complaints and Buethe's assessment both focus on the validity of the Plaintiff's self-reported symptoms.

The Eleventh Circuit's decision in *Flowers v. Comm'r of Soc. Sec.*, 441 F. App'x 735 (11th Cir. 2011) (per curiam) is instructive in this respect. In that case, the court upheld an ALJ's determination to accord diminished weight to the claimant's

testimony even though that finding was predicated on the same reasons as those employed by the ALJ to discount the opinions of the claimant's treating and examining doctors. *See id*. at 743.

B.

The Plaintiff's second challenge—as mentioned earlier—concerns the ALJ's consideration of Buethe's opinion. This challenge is also without merit.

As noted above, the ALJ's task at step four is to determine a claimant's RFC and his ability to perform his past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545. To do so, an ALJ must decide given all the relevant evidence before her what a claimant can do in a work setting despite any physical or mental restrictions caused by the claimant's medically determinable impairments and related symptoms. *Id.* § 404.1545(a)(1). In conducting this evaluation, the ALJ must review the medical opinions of record, as well as all the claimant's severe and non-severe medically determinable impairments, the total limiting effects of each impairment, and the claimant's subjective symptoms. *See id.* §§ 404.1520(e), 404.1545(a)(3); *see also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268–69 (11th Cir. 2019) (per curiam) (stating that "[c]onsideration of all impairments, severe and non-severe, is required when assessing a claimant's RFC") (citation omitted).

Medical opinions are statements from physicians or other acceptable medical sources "that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite [his] impairment(s), and [his] physical or mental restrictions." *Winschel v.*

*Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178–79 (11th Cir. 2011) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). Under the SSR in effect at the time the Plaintiff filed his DIB application, a physical therapist was deemed not to be an acceptable medical source but rather an "other source," whose opinion "should be evaluated on key issues such as impairment severity and functional effects[.]" SSR 06-03p, 2006 WL 2329939, at *3 (S.S.A. 2006); *see also Amerson I*, (Doc. 19) (M.D. Fla. Sept. 23, 2020) (citing *Revels v. Berryhill*, 874 F.3d 648, 665–66 (9th Cir. 2017)). SSR 06-03p further provided that if the ALJ failed to explain the weight she assigned to an other source's opinion, she had to "ensure that the discussion of the evidence . . . [otherwise] allow[ed] a claimant or subsequent reviewer to follow the adjudicator's reasoning[.]" SSR 06-03p, 2006 WL 2329939, at *6; *see also Michael A. v. Comm'r, Soc. Sec. Admin.*, 2021 WL 4234964, at *6 (N.D. Ga. July 30, 2021) (stating that "SSR 06-03p directs the ALJ to 'explain the weight given to opinions from the[ ] 'other sources,' or otherwise ensure that the discussion of the evidence . . . allows a claimant or subsequent reviewer to follow the adjudicator's reasoning'") (citation omitted), *report and recommendation adopted,* 2021 WL 3732853 (N.D. Ga. Aug. 24, 2021).

In this case, as reflected in the ALJ's decision, Buethe conducted a functional capacity assessment of the Plaintiff in December 2016. *See* (R. 802). Based on that single examination, Buethe opined that the Plaintiff "was precluded from sedentary exertional level and could never lift from [his] waist to [the] floor, [could] rarely lift [fifteen] pounds, [could] occasionally lift [ten] pounds, [could] frequently lift [five]

pounds, [could] occasionally sit, and [could] rarely kneel, climb stairs, perform standing work, or walk." *Id.* (citation omitted).

In appraising Buethe's findings, the ALJ stated at the outset that she was not compelled to attribute any weight to those determinations because, as a physical therapist, Buethe was "not an acceptable medical source." (R. 802). Notwithstanding this remark, the ALJ then proceeded to set forth the reasons why she accorded only "little weight" to Buethe's opinion, beginning with her observation that Buethe grounded his assessment "mostly" on the Plaintiff's reported symptoms, which—as referenced above—the ALJ declined to fully credit. *See id.* This rationale for discounting Buethe's opinion is amply buttressed by the case law. *See Womble v. Comm'r of Soc. Sec.*, 705 F. App'x 923, 927 (11th Cir. 2017) (per curiam) (upholding the ALJ's decision to only partially credit the opinions of the claimant's treating physicians because those opinions were mainly predicated on the claimant's subjective complaints); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (per curiam) (finding that the ALJ's determination not to fully endorse a doctor's opinion was adequately substantiated because, among other things, that opinion was predominantly based on the claimant's reported symptoms).

In addition to Buethe's reliance on the Plaintiff's subjective complaints, the ALJ highlighted that Buethe's findings stemmed from only one evaluation without any follow-up. (R. 802). It is notable in this respect that while Buethe stated in conjunction with his assessment that the Plaintiff "m[ight] benefit from physical therapy to address [the] limitations and impairments" which Buethe identified (R. 456), the Plaintiff's

next physical therapy session—as recounted in the ALJ's decision—did not occur until four-and-a-half years later. (R. 802–03).

The ALJ also emphasized that Buethe's proposed "extreme limitations" did not cohere with Buethe's own documentation, as well as the remainder of the record evidence. With respect to the former, the ALJ observed that Buethe's "[e]xamination notes were consistently normal with few isolated mildly reduced strength and musculoskeletal/spinal tenderness" and showed the Plaintiff to have a "full range of motion, normal sensation, and no neurological deficits for the most part." (R. 802). As for the latter, the ALJ commented that the "[n]eurology and rheumatology" treatment materials were likewise "unremarkable," with the exception of "scattered [ten] to [eleven] out of [eighteen] tender points and weakness of the arms when holding them up[,]"[3] and that a "consultative examination" performed by Dr. Bhupendra Kumar Gupta in June 2015 similarly revealed "no deficits with essentially normal range of motion, full strength, and no neurological deficits[.]" *Id*.

To the extent that the Plaintiff now invites the Court to reweigh the record evidence regarding the ALJ's appraisal of Buethe's opinion, *see, e.g.*, (Doc. 25 at 8–18),

[3] The exhibits the ALJ cited in this regard sufficiently bolster her assessment. By way of example, medical records compiled between May 2014 and January 2015 reflect that the Plaintiff had a normal gait and stance, a normal range of motion, and 5/5 strength in his upper and lower extremities. (R. 422, 425, 804). Moreover, at a doctor's appointment during the same month that the Plaintiff saw Buethe (December 2016), the Plaintiff was described as having 4/5 motor strength in all four of his extremities. (R. 433, 805). And in February 2017, there were several provider visits where the Plaintiff was characterized as having a normal range of motion, no joint pain, no swelling in the joints, no loss of motion, normal symmetry, strength, and range of motion in his joints, normal heel and toe walking, and a gait within normal limits. (R. 439, 445).

the Court is prohibited from doing so at this juncture, *see Carter*, 726 F. App'x at 739 (cautioning that, on appeal, a court "may not decide the facts anew . . . or re-weigh the evidence") (citing *Moore*, 405 F.3d at 1211); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (noting that when the Commissioner's decision is supported by substantial evidence, a court must affirm it even if the court would have reached another result and even if "the evidence preponderates against" it). And to the extent that the Plaintiff also singles out other information in the record to buttress his second challenge (Doc. 25 at 8–18), the existence of such evidence is immaterial given the circumstances presented. *See Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam) ("Under a substantial evidence standard of review, [a claimant] must do more than point to evidence in the record that supports [his] position; [he] must show the absence of substantial evidence supporting the ALJ's conclusion.") (citing *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam)).

In sum, although the ALJ stated that Buethe was not an acceptable medical source and that it was unnecessary to assign any weight to his opinion, the ALJ did not discount Buethe's opinion on that basis alone. Instead, as she did in evaluating the Plaintiff's claimed symptoms, she reached her determination regarding Buethe's findings only after she gauged those assessments against the other record evidence, including Buethe's own examination notes, the Plaintiff's longitudinal treatment materials (even those which extended beyond his DLI), and Buethe's substantial reliance on the Plaintiff's subjective complaints. Accordingly, the Court finds that the ALJ appropriately considered Buethe's opinion, and that her appraisal of that opinion

is adequately substantiated by the record. *See Coles v. Comm'r, Soc. Sec. Admin.*, 2024 WL 3311318, at *2–3 (11th Cir. July 5, 2024) (per curiam) (upholding the ALJ's rejection of a consultative examiner's opinion in a fibromyalgia case where the ALJ noted there were normal findings on examination, a record of conservative treatments, and a disconnect between the claimant's longitudinal records and the consultative examiner's assessment that the claimant had "extreme limitations" in his ability to perform work-related physical activities); *Gray v. Comm'r of Soc. Sec.*, 2019 WL 3934441, at *4–5, *8–9 (M.D. Fla. Aug. 20, 2019) (finding that the ALJ did not err in according "little weight" to an other source's opinion because, among other things, it was inconsistent with the medical record and the claimant's subjective complaints); *Bonsanto v. Astrue*, 749 F. Supp. 2d 1330, 1335–36 (M.D. Fla. 2010) (concluding that the ALJ's discreditation of other source opinions in a fibromyalgia case was properly supported where the opinions, among other things, did not comport with the other sources' examinations and the rest of the record evidence, and were also grounded primarily on the claimant's subjective complaints).

C.

The Plaintiff's third challenge—as alluded to above—is that the ALJ failed to expressly take into account certain lay evidence of record—namely, the testimony of the Plaintiff's wife presented at the first ALJ hearing. (Docs. 25, 33). The Plaintiff predicates this claim of error on the concluding language in the Court's Order in *Amerson I*, in which the Court reminded the Commissioner that he must "reassess the

entire record [on remand], including . . . any lay evidence offered." *Amerson I*, (Doc. 19) (M.D. Fla. Sept. 23, 2020). This challenge is without merit as well.

To start, it is premised on a flawed reading of the above language from the *Amerson I* Order. While the Court referenced lay evidence at the end of the Order when it directed the ALJ to ensure that she reconsidered the entirety of the record on remand, the Court did not purport to impose any heightened obligation on the ALJ to address such evidence or to give it any special attention.

Nor does the governing law demand that an ALJ treat lay testimony in the manner now proposed by the Plaintiff. As the Eleventh Circuit has observed in this respect, an ALJ is not required "to make an explicit credibility determination as to a family member's testimony or statements," and a court "will not find error [on appeal] if the [ALJ's] credibility determination was implicit in the rejection of the claimant's testimony." *Osborn v. Barnhart*, 194 F. App'x 654, 666 (11th Cir. 2006) (per curiam).

In this case, as explained above, the ALJ clearly discounted the Plaintiff's subjective testimony regarding the disabling nature of his condition. *Id*. at 666. As a result, "the ALJ's specific and explicit credibility determination as to [the Plaintiff's] testimony sufficiently implie[d] a rejection of [his wife's] testimony as well." *Id*. (citing *Allen v. Schweiker*, 642 F.2d 799, 801 (5th Cir. 1981)). Nothing more was needed. *See Carter v. Bisignano*, 2026 WL 2279465, at *5 (M.D. Fla. Aug. 7, 2026) (finding that because the "the ALJ expressly discounted [the claimant's] testimony and statements regarding the limiting effects of [his] impairments, [the ALJ] impliedly discredited the similar statements of [the claimant's] mother") (collecting cases); *Naylor v. Comm'r of*

*Soc. Sec.*, 2015 WL 926025, at *8 (M.D. Fla. Mar. 4, 2015) (noting that even if an ALJ completely fails to address a third party's statements or their credibility, "an implied rejection of that evidence is enough"); *Floro v. Comm'r of Soc. Sec.*, 2013 WL 4520463, at *9 (M.D. Fla. Aug. 26, 2013) (ruling that "the ALJ's explicit credibility determination regarding [the c]laimant's testimony sufficiently implie[d] that the ALJ also rejected his wife's statements") (citations omitted).

IV.

For the foregoing reasons, it is hereby ORDERED:

1. The Commissioner's decision is affirmed.

2. The Clerk is directed to enter Judgment in the Defendant's favor, to terminate any pending motions and deadlines, and to close the case.

SO ORDERED in Tampa, Florida, this 29th day of September 2026.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record